BSD

# 3:25-cv-17579-RK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____x

HVP2 LLC,
Appellant,

v.

New Rite Aid, LLC,
Appellee.

_____x

On Appeal from the United States Bankruptcy Court
for the District of New Jersey
Bankruptcy Case No. 25-14861 (MBK)

Order Dated and Entered November 3, 2025 (ECF No. 3161)

_____

## APPELLATE BRIEF OF APPELLANT HVP2 LLC

_____

Law Office of Shmuel Klein PA
Attorney for Appellant HVP2 LLC
113 Cedarhill Ave
Mahwah, NJ 07430
845-425-2510
Attorney ID 00851987
email: shmuel.klein@verizon.net

## <u>TABLE OF CONTENTS</u>

Table of Authorities ................................................................................................ ii

Jurisdictional Statement ......................................................................................... 1

Issues Presented ...................................................................................................... 1

Standard of Review ................................................................................................. 1

Statement of Facts ................................................................................................... 2

Summary of Argument ............................................................................................ 3

Argument ................................................................................................................. 3

    A. The Bankruptcy Court Erred by Denying Administrative Expense Treatment

       for Post-Petition Rent, Stub Rent, and Related Charges ................................. 4

    B. The Bankruptcy Court Erred in Denying Adequate Protection .................................... 6

    C. The Bankruptcy Court Erred in Finding Proper Surrender ......................................... 8

    D. The Bankruptcy Court Erred by Denying Contractual Attorneys' Fees ................... 10

    E. The Bankruptcy Court Erred by Refusing to Consider CAM Charges ..................... 11

    F. The Bankruptcy Court Erred in Concluding Late Fees Were Unrecoverable ........... 12

Conclusion ............................................................................................................. 13

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

Calpine Corp. v. O'Brien Environmental Energy, Inc.
(In re O'Brien Environmental Energy, Inc.), 181 F.3d 527 (3d Cir. 1999) ............................ 7

Cramer v. Mammoth Mart, Inc.
(In re Mammoth Mart, Inc.), 536 F.2d 950 (1st Cir. 1976) .................................................... 7

In re Goody's Family Clothing, Inc., 610 F.3d 812 (3d Cir. 2010) .................................. 5, 6–7

In re Montgomery Ward Holding Corp., 268 F.3d 205 (3d Cir. 2001) ...................................... 7

In re Pacific–Atlantic Trading Co., 27 F.3d 401 (9th Cir. 1994) .......................................... 6–7

In re Slim Life Weight Loss Centers, Corp., 182 B.R. 701 (Bankr. D.N.J. 1995) .................... 6

159 MP Corp. v. Redbridge Bedford, LLC, 33 N.Y.3d 353 (2019) ........................................ 11

Vermont Teddy Bear Co. v. 538 Madison Realty Co., 1 N.Y.3d 470 (2004) .......................... 11


<u>Statutes</u>

11 U.S.C. § 361 ............................................................................................................................ 4
11 U.S.C. § 363(e) ....................................................................................................................... 4
11 U.S.C. § 365(d)(3) ........................................................................................................ 3–4, 5, 6
11 U.S.C. § 503(a) ....................................................................................................................... 4
11 U.S.C. § 503(b)(1)(A) ......................................................................................................... 3–4
11 U.S.C. § 503(b)(7) ................................................................................................................... 6
28 U.S.C. § 158(a)(1) ................................................................................................................... 1
New York Real Property Act § 211 .......................................................................................... 11


<u>Legislative History</u>

H.R. Rep. No. 882, 95th Cong., 2d Sess.,
reprinted in 1984 U.S.C.C.A.N. 576 ..................................................................................... 4


<u>Treatise</u>

"The American Law Institute, Restatement of Property" (St. Paul, MN: 1936), § 7,
Comment on Clause (a) (Clause (a) being part of the definition of 'possessory interest in land') ...... 9

JURISDICTIONAL STATEMENT

This Court has jurisdiction under 28 U.S.C. § 158(a)(1), which grants appellate jurisdiction by this Court over final orders of the Bankruptcy Court.

The Bankruptcy Court entered a final order on November 3, 2025 (See Record at page 006) based upon its written opinion (See Record at page 008) which fully resolved HVP2's LLC (hereinafter HVP or Appellant) (1) Motions to Compel Payment of Administrative Expenses and (2) Motions for Adequate Protection, making them final appealable orders.

The Notice of Appeal was timely filed (See Record at page 003) together with the Appellants Designation (See Record at page 004).

STANDARD OF REVIEW

This Court may review legal conclusions de novo.  Factual findings are reviewed for clear error.

Denial of administrative expenses is reviewed de novo because it involves statutory interpretation and abuse of discretion.

Adequate protection is reviewed de novo because it involves statutory interpretation and abuse of discretion.


ISSUES PRESENTED

1. Whether the Bankruptcy Court erred in denying administrative expenses under 11 U.S.C. 365(d)(3) and 11 U.S.C. 503 for post-petition rent, stub rent, late fees, attorney fees and related charges.

2. Whether the Bankruptcy Court erred by denying adequate protection under 11 U.S.C. §§ 361 and 363(e).

3. Whether the Bankruptcy Court erred in finding that Appellee properly surrendered the premises as of July 31, 2025.

4. Whether the Bankruptcy Court erred in denying HVP2's contractual claim for attorneys' fees under Section 21.3 of the Lease.

5. Whether the Bankruptcy Court erred by refusing to consider CAM charges despite evidence they were part of Appellees' post-petition obligations.

6. Whether the Bankruptcy Court erred in concluding that late fees were legally unavailable.

<u>STATEMENT OF FACTS</u>

HVP2 LLC (hereinafter HVP, landlord or Appellant) was the landlord of certain commercial retail space at located at 83 Vandenburgh Ave., Troy, New York (hereinafter "the premises").   The Appellee, New RiteAid LLC (hereinafter RiteAid, tenant or Appellee) was the successor tenant of the premises pursuant to a ten year lease (hereinafter "the lease") (See Record at page 310) dated April 24, 2017 (renewable) which required HVP to take out a muli-million dollar thirty year loan to construct a custom built pharmacy for the Appellee.  However, six years into the lease, the Appellee filed its first bankruptcy on October 15, 2023.   Appellee originally occupied a smaller space in a strip mall adjacent to the premises (not owned by HVP).   The lease required Appellee to pay a proportionate amount of the Common Area Maintenance (CAM) charges of the strip mall and the new site, provided for late fees and attorney's fees.   In the first bankruptcy, Appellee assumed the lease and paid all administrative fees, rent, CAM charges, late fees and attorney's fees.   Appellee then filed its second bankruptcy on May 5, 2025, but continued to occupy and use the premises for months without timely paying stub rent, late fees, CAM charges, attorney fees or providing adequate protection.

As a result, HVP filed the following motions:

a)  ECF 182 (See Record at page 298) – Motion to Compel Payment of Administrative Expenses;

b)  ECF 390 (See Record at page 285) – First Motion for Adequate Protection;

c)  ECF 1755 (See Record at page 149) – Second Motion for Adequate Protection.

The Bankruptcy Court entered a final order on November 3, 2025 (See Record at page 006) based upon its written opinion (See Record at page 008) which fully resolved HVP's (1) Motions to Compel Payment of Administrative Expenses and (2) Motions for Adequate Protection for stub rent, late fees, CAM charges, and attorney fees, making them final appealable orders.  The Notice of Appeal was timely filed (See Record at page 003) together with the Appellants Designation (See Record at page 004).

The Bankruptcy Court Opinion (See Record at page 025) held, among other things:

a)  The stub rent was paid when the motion was heard, albeit five months late;

b)  Stub rent could be delayed until plan confirmation;

c)  Appellees adequately surrendered the premises despite not turning over keys or alarm access codes;

d)  CAM charges were not preserved and therefore ignored;

e)  Attorneys' fees were unavailable because HVP2 was not a "prevailing party";

f)  Late fees were categorically inappropriate.

SUMMARY OF ARGUMENT

The Bankruptcy Court committed multiple errors of law and abused its discretion.  Appellee occupied HVP's premises post-petition.  The Bankruptcy Code requires timely payment of rent and grants landlords a right to priority administrative expenses and adequate protection.  The Court disregarded these statutory requirements, excused Appellees' non-performance, and ignored the plain language of the lease.  The Court also erred in finding proper surrender of the premises, even though Appellees never turned over keys, access codes, or operational control of the property.  The Bankruptcy Court further erred in refusing to consider CAM charges, rejecting contractual attorneys' fees, and denying late fees each of which arise under the Lease terms.  Each of these errors warrants reversal.

ARGUMENT

A. The Bankruptcy Court Erred by Denying Administrative Expense Treatment

Under 11 U.S.C. § 365(d)(3), a Debtor must timely perform all obligations under a non-residential real property lease pending assumption or rejection.  Rent that accrues post-petition is automatically deemed an administrative expense.  The express language of the statute requires such performance "until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title."  The requirements in § 503(b)(1) that the lease obligations be actual or necessary costs of preserving the estate.

The intent behind § 365(d)(3), as applicable to the facts of the case before this Court, is set forth in its legislative history:

> This subtitle contains three major substantive provisions which are intended to remedy serious problems caused landlords and their solvent tenants by the administration of the bankruptcy code.... the Landlord is forced to provide current services-the use of its property, utilities, security, and other services-without current payment. No other creditor is put in this position. In addition, the other tenants often must increase their common area charge payments to compensate for the Debtor in Possession's failure to make the required payments for the debtor. The bill would lessen these problems by requiring the Debtor in Possession to perform all the obligations of the debtor under a lease of nonresidential real property at the time required in the lease. This timely performance requirement will ensure that debtor-tenants pay their rent, common area, and other charges on time pending the Debtor in Possession's assumption or rejection of the lease.
> Senator Orrin Hatch, H.R. Rep. No. 882, 95th Cong., 2d Sess., reprinted in 1984 U.S.C.C.A.N. 576.

The Senator's reasoning applies directly to the facts in this appeal. Appellant was forced to make timely payments on the multi-million dollar mortgage taken to build Appellees pharmacy or incur late charges if payment was not made. Appellant was forced to make timely payments and "provide current services-the use of its property, utilities, security, and other services-without current payment" ibid. Congress was very clear for the purpose in enacting section 365(d)(3) and section 503(b)(1). The Bankruptcy Court's Order and Opinion must be reversed on the law.

## B. The Bankruptcy Court Erred in Denying Adequate Protection

Adequate protection is defined in Section 361 of the Bankruptcy Code. Under Section 361, a debtor must: (1) make a cash payment or payments to the extent the stay results in a decrease in the value of its collateral; or (2) provide the creditor an additional or replacement lien, such as a replacement lien on post-petition accounts receivable. The court can also grant other relief that will result in the "realization" of the "indubitable equivalent" of the creditor's interest in its collateral to the extent options (1) or (2) are insufficient to provide the creditor with adequate protection.

Section 503 allows a creditor to make a timely request for payment of an administrative expense, or a late request for payment with permission of the court for cause. See 11 U.S.C. § 503(a).

Under 11 U.S.C. §§ 361 and 363(e), HVP is entitled to adequate protection for Appellees'
continued post-petition use of the premises.

In re Goody's Family Clothing Inc. 610 F.3d 812, 815 (3d Cir. 2010) is the controlling Third
Circuit opinion cited by the parties and the Bankruptcy Court in the Opinion which is appealed.   The
decision examines the interplay between § 365(d)(3)(A) and § 503(b)(1).  The Circuit Court held that
"§365(d)(3) is best understood as an exception to the general procedures of § 503(b)(1) that ordinarily
apply." 610 F.3d 812, 817 (3d Cir. 2010). The Third Circuit summarizes its precedent as follows:

> "Post-petition obligations are ordinarily given payment priority as administrative expenses,
> though such claims must still go through standard procedures of notice and a hearing to
> demonstrate that the costs were actual, necessary expenses of preserving the estate. See 11
> U.S.C. § 503(b) ("After notice and a hearing, there shall be allowed administrative expenses, ...
> including ... the actual, necessary costs and expenses of preserving the estate."). Section 365(d)
> (3) operates to dispense with these requirements for post-petition obligations under an
> unexpired lease of nonresidential real property, meaning it functions "without prevention or
> obstruction from or by" § 503(b)(1)."
> In re Goody's Family Clothing Inc., 610 F.3d at 817.

The debtor in In re Goody's complied with the obligations imposed by § 365(d)(3).  The Court
had no reason to analyze the proper remedy for failure to make such a payment.  What remained was
unpaid rent that accumulated after the petition was filed but before the next rent payment was due
pursuant to the terms of the lease (now known as "stub rent").   The Debtor argued that it had no
obligation under § 365(d)(3) to pay stub rent.  The Third Circuit addressed this argument as whether
§365(d)(3) was the only source of payment for stub rent, or whether a landlord could seek payment of
stub rent pursuant to § 503(b)(1) as an actual and necessary cost to the estate. See id. at 816.   The
Third Circuit held that "[r]elieving a landlord under § 365(d)(3) of burdensome administrative
procedures … does not foreclose that landlord's ability to use the more burdensome procedures [set
forth in § 503(b)] to recover in situations outside the scope of § 365(d)(3)." Id., 610 F.3d at 817.  As a
result, the holding in In re Goody's also allows the landlord to seek payment for stub rent, and the
proportionate amount of CAM charges, late fees and attorney's fees. pursuant to §503(b)(1).

-5-

In re Slim Life Weight Loss Centers, Corp., 182 B.R. 701, 705-06 (Bankr. D.N.J. 1995) held 11 U.S.C. § 365(d)(3) grants administrative priority to rents due under unexpired lease of non-residential real property in spite of requirements of 11 U.S.C. § 503(b)(1).   The Ninth Circuit elaborated on the concerns expressed by Senator Hatch in the legislative history to § 365(d)(3) in the case of In re Pacific-Atlantic Trading Co., 27 F.3d 401 (9th Cir. 1994).  There, the Court found that failure to pay rent pursuant to § 365(d)(3)(A) results in an administrative claim.  It noted that without mandating payment through an administrative expense, a Debtor in Possession would be permitted to benefit from disobeying the statute's directive by simply failing to pay rent. See id. at 405. Allowing another remedy would do nothing to address the problem that § 365(d)(3) seeks to resolve, namely that the landlords and their other tenants bear the post-petition costs and burdens while a Debtor in Possession evaluates the value of the lease. See id.  The statutory requirement to pay post-petition rent puts the burden on the Debtor in Possession to stop the obligation to pay by formally rejecting the lease. See id. By failing to allow an administrative expense, the burden shifts to the landlord to move to reject the lease or take some other action to protect its interests if it is not being paid. See id.

Consequently, § 365(d)(3) can be read to say that aside from administrative expenses provided for in § 503(b)(1), § 365(d)(3) creates a new and additional "obligation" not founded on the administrative expense concept. Congress found it appropriate to require that the lease "obligations" must be **timely** paid (i.e., when due in the pre-rejection period), however one may otherwise label those "obligations."   Had Congress intended for an administrative expense to be the exclusive remedy for a violation of § 365(d)(3), it would have set forth such relief within the statute.  In fact, § 503(b)(7) defines certain debt accumulated under a nonresidential lease that was accepted and then rejected as an administrative expense. There is no such treatment given in § 503(b) to unpaid post-petition rental obligations generally.  As a result, in addition to the rent, the Appellee owes the proportionate amount of CAM charges, late fees and attorney's fees.

Without some monetary recourse available to a landlord, there would be little incentive for a Debtor in Possession to make a payment under § 365(d)(3) unless and until the lease is assumed.

This Court's powers must be exercised so as to "give teeth" to the statute. This includes allowing administrative expense claims as a remedy for not only stub rent but also the proportionate amount of CAM charges, late fees and attorney's fees. Such a remedy is the most logical outcome. Congressional intent makes clear that landlords should not be saddled with additional post-petition damages during a bankruptcy. While this may reduce the distributions to the creditor body as a whole, the creditor body does not face a similar burden. The Lease cannot be deemed surrendered prior to its rejection, monetary compensation is warranted and the Bankruptcy Court Order should be reversed.

Further, "an obligation arises under a lease for the purposes of § 365(d)(3) when the legally enforceable duty to perform arises under that lease." In re Montgomery Ward Holding Corp., 268 F.3d 205, 211 (3d Cir. 2001). The Landlord is therefore seeking this portion of its claim under § 503(b)(1) only, and that amount must "actual, necessary costs and expenses of preserving the estate." This was the issue considered in the Goody's case, where the Third Circuit found:

> "For a commercial lessor's claim to get administrative expense treatment under § 503(b)(1), the debtor's occupancy of the leased premises must confer an actual and necessary benefit to the debtor in the operation of its business. See Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.), 181 F.3d 527, 532-33 (3d Cir.1999) (citing Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.), 536 F.2d 950, 954 (1st Cir.1976)). Proving this is the lessor's burden. Id. at 533. Thus, the Landlords "must ... carry the heavy burden of demonstrating that the ['stub rent'] for which [they] seek[ ] payment provided an actual benefit to the estate and that [incurring 'stub rent' was] necessary to preserve the value of the estate assets." Id. (citation omitted). In re Goody's Family Clothing Inc., 610 F.3d at 818.

Appellees continued to occupy the premises for months, generating value for their estate, while failing to timely pay stub rent, CAM charges, late fees and attorney's fees. The Bankruptcy Court's Order provided no statutory basis for denying adequate protection and ignores the mandatory language of §363(e), which requires "adequate protection" in addition to the lease terms. As a result, the Order must be reversed.

-7-

C. The Bankruptcy Court Erred in Finding Proper Surrender

The Bankruptcy Court determined that Appellees surrendered the premises despite failing to deliver keys, access codes, or an operable alarm system and despite the fact that they actually had keys, and critical access codes because they changed those access codes in August, 2025. They continued to control the premises and must pay August, 2025 rent.

The Rejection Procedures Order required Appellees either to: a) deliver keys and access codes; or b) notify the landlord that keys and access codes were unavailable and that the landlord could rekey the premises.

Appellees did neither. A "Surrender Letter" that did not contain keys or functional access codes does not constitute surrender. The conclusion that the alarm was merely "locally ringing" underscores Appellees' failure to provide full access and control, which prevents legally sufficient surrender. The access codes *were* available. Appellee knew the access codes and gave them to Appellant in August. The Bankruptcy Court's finding is clearly erroneous and must be reversed.

New York law also defines possession. It means to have physical possession or otherwise to *exercise dominion or control* over the property. Possession of property can be in either of two ways; first, by physical possession of property in occupying the premises or second, by exercising dominion or control over that property. Exercising dominion or control over property not in physical possession is said to have that property in his or her "constructive possession." Under New York law, constructive possession when that person exercises a level of control of the property. Additionally, the law recognizes the possibility that two or more individuals can jointly have property in their constructive possession. Two or more persons have property in their joint constructive possession when they each exercise dominion or control over the property by a sufficient level of control over the area in which the property is found or over the person from whom the property is seized sufficient to give each of them the ability to use or dispose of the property. Possession may exist either with the

-8-

physical occupation or exclusive control of the situs.  "The American Law Institute, Restatement of Property" (St. Paul, MN: 1936), § 7, Comment on Clause (a) (Clause (a) being part of the definition of 'possessory interest in land').

As seen in the Appellee's certification in opposition to Appellants motions, Shelby A. Marks an employee of the Debtor, admits that she sent a "confidential" email (not to the Appellant):

> "In connection with Debtors' rejection processes, on July 28, 2025, I emailed Everon, LLC ("Everon"), the third-party service which was responsible for managing the burglar alarm and monitoring services at, among other locations, the Debtors' Store No. 10687 at 83 Vanenburgh Avenue, Troy, New York (the "Premises"), with the subject line "7/31/25 Stop Service Notice CONFIDENTIAL," advising Everon that the Debtors would be surrendering approximately 375 locations in which the Debtors received service, including the Premises, on July 31, 2025, at 11:59 pm"
> See Page 100 of the Record

Appellee admits having the access codes as of  July 31, 2025, at 11:59 pm.  Appellee admits not giving Appellant the access codes until August, 2025.  See Page 101 of the Record.

In fact, those access codes worked in August as seen in the certification of the Appellant.  See Page 130 of the Record.  Therefore, since the Appellee continued its control of the premises to the exclusion of the Appellant by refusing to give any information regarding the access codes (despite actual knowledge of the access codes)  Appellee is responsible for August 2025 rent.   The July 31, 2025 one minute before midnight is not notice, especially when it contained no information.  Without providing access codes,  Appellee never truly gave up control of the property.  HVP could not access, secure, show, or repair the premises.  Appellant had "constructive possession".  Late or last-minute notice without the access codes at 11:59 PM left the landlord unable to take possession on time, prevented mitigation efforts, created a liability risk, and violated surrender procedures.

The lease required twelve months notice before ending the lease.  See Lease Section 2 (Record Page 313).  It also requires a minimum of 30 days notice of termination.  See Lease Section 21 (Record Page 332).  The reason why a certain amount of time is required before surrender of the premises is so

that the landlord can gain access to the premises in order to re-lease the building to make the it rentable. The landlord also needs the new tenant income as soon as possible so as not to be in default of its own financial obligations such as the mortgage, utilities, taxes, CAM charges and other costs related to the operation of the building.   Sufficient notice is required for a broker to physically have access to the building to show to a new tenant.  One minute notice before midnight is not reasonable.   The Bankruptcy surrender order stated "if" the access codes were not available.  In this case, they were.

## D. The Bankruptcy Court Erred by Denying Contractual Attorneys' Fees

The Bankruptcy Court held there were "no defaults" but simultaneously acknowledged that Appellees delayed the stub rent payment for months.  HVP was required to bring these motions to enforce the lease for the stub rent, CAM charges, late charges and attorney's fees.  The Court misapplied the "prevailing party" concept.  Even partial success is sufficient. The Court's categorical denial based on lack of documentation is also reversible because the Court refused to reach the merits.

The lease explicitly provides for attorney's fees:

21.3. In the event that either Landlord or Tenant seeks enforcement of its rights and commences any suit for the collection of any amounts for which the other may be in default or for the performance of any other covenant or agreement hereunder, the prevailing party shall be entitled to be reimbursed by the other party for reasonable attorneys' fees and expenses incurred in enforcing such obligations and/or collecting such amounts.

See Record Page 333

However, the Appellee misrepresented the above section regarding attorneys fees by citing a portion of the "Declaration of Reciprocal Easements and Restrictions" which is a different section of the lease which, by its explicit terms only deals with that declaration and not the formal lease. Nevertheless, the motion to compel payment of the stub rent was successful and the Appellee must pay Appellant's  attorney's fees in the current amount (without prejudice) of $38,249.00.  If Appellant had not made the motions for adequate protection and administrative expenses, the Appellee would have never paid.  The motion was successful.  The Bankruptcy Order which denied attorney's fees must be

-10-

reversed.  This Court may remand and allow the Appellant to submit an itemization of attorney's fees.

E. The Bankruptcy Court Erred by Refusing to Consider CAM Charges

The lease states in Section 5 (Record Page 317) that Appellee is responsible for paying the Common Area Maintenance Charges (CAM).  However, the Bankruptcy Court held that CAM charges were not included in the motions.  This is erroneous.  The CAM charges were referenced in certifications, CAM charges were part of the Lease obligations and is rent, and Appellees' obligations to pay CAM continued post-petition.  The Bankruptcy Court abused its discretion in failing to consider the CAM charges raised in papers and at hearing.

The Lease specified that the location of the premises will determine the choice of law.  In this case,  the premises is located in New York and New York law applies.

New York Real Property Act §211 defines "rent" as:

5. The term "rent" as used in this article shall mean any consideration, including any bonus, benefit or gratuity demanded or received for or in connection with the possession, use or occupancy of housing accommodations or the execution or transfer of a lease for such housing accommodations. The term "rent" shall not include any separate charges for services, amenities or facilities which the tenant pays in addition to rent, including but not limited to charges for fitness centers, parking, storage, or facility rentals, provided that such charges are not imposed or increased for the purposes of circumventing this article.

Under New York law, rent includes "any" consideration.  The legislature gave a very broad definition to rent so that it would include the stub rent, CAM charges, late fees and attorney's fees.

The highest state court in New York is its Court of Appeals.  It described as "familiar and eminently sensible," the proposition of law "that, when parties set down their agreements in a clear, complete document, their writing should be enforced according to its terms." 159 MP Corp. v. Redbridge Bedford, LLC, 33 N.Y.3d 353, 358 (2019) (citation, internal quotation marks and ellipsis omitted).  The same Court has also explained the particular importance of such a rule in the context of real property transactions "'where commercial certainty is a paramount concern and where … the instrument was negotiated between sophisticated counseled business people negotiating at arms

-11-

length.'" <u>159 MP</u>, 33 N.Y.3d at 359 (quoting <u>Vermont Teddy Bear Co. v. 538 Madison Realty Co.</u>, 1 N.Y.3d 470, 475 (2004).)    Refusing to consider the terms of the lease elevates form over substance and deprives Appellant of substantive rights.  The bankruptcy order must be reversed and remanded.

<u>F. The Bankruptcy Court Erred in Concluding Late Fees Were Unrecoverable</u>

In the Bankruptcy Court Opinion, it held that stub rent need not be paid until plan confirmation. That is legal error.  Pursuant to Section 365(d)(3) requires **timely** performance of the obligation. "Timely" is defined by the lease.  The lease clearly states that rent is due on the first of the month and a late fee of five percent (5%) will be assessed if the rent is not paid by the fifth day of the month.  See Record Page 316 or Section 3.8 of the lease.   The Opinion acknowledges rent was not paid until September or five months late, but excuses the delay because the Code "imposes no deadline."  There may be no "deadline" to pay but the penalty for the delay is the late charge mandated by the lease. Therefore, denial of administrative expense for late fees must be reversed.

The Bankruptcy Court held no late fees were available because stub rent payments were eventually made and other rent was "timely."  This is contradicted by the record and by Section 3.1 of the Lease, which imposes late charges for delayed rent.  The Court's analysis is legally and factually incorrect and should be reversed.

<u>CONCLUSION</u>

For the foregoing reasons, Appellant HVP2 LLC respectfully requests that this Court:

1.      Reverse the Bankruptcy Court's Order (ECF No. 3161);

2.      Award administrative expense treatment for all post-petition obligations;

3.      Order adequate protection payments;

4.      Hold that Appellees failed to properly surrender the premises and therefore owes August 2025 rent;

5.      Direct the Bankruptcy Court to calculate and award CAM charges, late fees, and attorneys' fees

and remand for a hearing on each; and

6.      Grant such other relief as is just and equitable.

Respectfully submitted,

<u>/s/ Shmuel Klein</u>
Shmuel Klein
Counsel for Appellant HVP2 LLC