**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>NEW RITE AID, LLC, et al.,<br><br>Debtors. | Bankruptcy Case No. 25-14861 (MBK) |
| HVP2 LLC,<br><br>Appellant,<br><br>v.<br><br>NEW RITE AID, LLC, et al.,<br><br>Appellees. | Civil Action No. 25-17579 (RK)<br><br>**MEMORANDUM OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon Appellant HVP2 LLC's ("HVP") appeal from the United States Bankruptcy Court for the District of New Jersey's ("Bankruptcy Court") November 3, 2025 Order denying HVP's "Motion to Compel Payment of Administrative Expenses," its "Motion for Adequate Protection," and its second "Motion for Adequate Protection in Addition to Motion to Compel Payment of Administrative Expenses." ("Bankr. Order," Bankr. ECF No. 3161; "Bankr. Op.," Bankr. ECF No. 3159).[1] HVP filed a brief in support of its appeal. ("App.," ECF No. 4.) Appellee New Rite Aid, LLC and its affiliated debtors (together, "Appellees") opposed. ("Opp.," ECF No. 5.) HVP replied. ("Reply," ECF No. 6.) The Court has

[1] Citations to "ECF No. __" refer to docket entries in this appeal. Citations to "Bankr. ECF No. __" refer to docket entries in the underlying bankruptcy case, *In re New Rite Aid, LLC*, No. 25-14861 (Bankr. D.N.J.).

considered the parties' submissions and resolves the appeal without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. *See also* L. Civ. R. 601.1(c) (providing that the District's Local Civil Rules apply to bankruptcy appeals before the District Court). After careful consideration of the parties' submissions and, for the reasons explained below, the Bankruptcy Court's Order is **AFFIRMED.**[2]

## I. BACKGROUND

The factual and procedural background of this case are well known to the parties, and the Court recites only those facts relevant to the issues on appeal. The issues presently before the Court involve a lease for retail space located at 83 Vandenburgh Avenue in Troy, New York. (Bankr. Op. at 2.) HVP, the landlord of the premises, entered into a 10-year lease agreement in 2017 with one of Appellees' predecessor entities. ("Lease," Bankr. ECF No. 2391.) HVP and the predecessor entity later amended the Lease in 2018. (Bankr. ECF No. 1755-5.) The rights and obligations created under the Lease were subsequently assumed by Appellees.

The parties agree that, pursuant to the terms of the Lease, Appellees were required to pay monthly rent on the first of each month. (Lease § 3.1; *see* App. at 12; Opp. at 15.) This arrangement proceeded ostensibly without issue until May 1, 2025, when Appellees failed to issue payment in advance for the month of May. (Bankr. Op. at 2–3.) The reason for this non-payment was revealed four days later when, on May 5, Appellees filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. (Bankr. ECF No. 1.) From May 5 to July 31, 2025, Appellees continued to use and occupy the premises, and during this time, Appellees timely paid rent for June and July.

---

[2] The instant appeal arises from just one of more than one hundred Chapter 11 cases filed in the underlying New Rite Aid bankruptcy, all of which were jointly administered and overseen by the Honorable Michael B. Kaplan, U.S.B.J. The Bankruptcy Court has done exemplary work in the underlying proceedings and, despite its voluminous caseload, produced a well-reasoned opinion that materially aided this Court in resolving the issues on appeal.

(*See* Bankr. Op. at 5.) As for their tenancy between May 5 and May 31, 2025, Appellees issued payment to HVP for this period on September 8, 2025. (*Id.* at 2; *see* Bankr. ECF No. 2970 at 2.) Generally, the amount due to a landlord for this "period of occupancy and use between the petition date and the first post-petition rent payment" is called "stub rent." (Bankr. Op. at 4 (quoting *In re Goody's Fam. Clothing Inc.*, 610 F.3d 812, 815 (3d Cir. 2010).)

On June 9, 2025, the Bankruptcy Court entered a "Rejection Procedures Order," allowing Appellees to "reject[], assum[e], or assum[e] and assign[]" its executory contracts and unexpired leases given compliance with specific procedures. ("Rejection Procedures Order," Bankr. ECF No. 776.) Seeking to comply with the Rejection Procedures Order, Appellees noticed HVP of their intent to reject the Lease on July 25, 2025, and formally rejected the Lease on July 31, 2025. (*See* Bankr. ECF No. 1573 at 21; Bankr. ECF No. 2391 at 124.) On July 28, 2025, Appellees—consistent with the Rejection Procedures Order—served a surrender letter on HVP's attorney, wherein Appellees advised that HVP may rekey or recode the premises and provided instructions as to how to disarm and disable the alarm system. (Bankr. ECF No. 2391 at 124–27; Rejection Procedures Order ¶ 2a.) The letter further advised that surrender would become effective July 31, 2025. (Bankr. ECF No. 2391 at 124–27.)

HVP filed many motions in the resulting bankruptcy proceedings that need not be recounted with specificity. Relevant to the present appeal are HVP's Motion to Compel Payment of Administrative Expenses, filed May 9, 2025 (Bankr. ECF No. 182), its Motion for Adequate Protection, filed May 18, 2025 (Bankr. ECF No. 390), and its Motion for Adequate Protection in Addition to Motion to Compel Payment of Administrative Expenses, filed August 1, 2025 (Bankr. ECF No. 1755). These motions, in short, sought "(1) the balance of the May rent; (2) CAM

[Common Area Maintenance] charges; (3) post-petition late fees; and (4) [fees in connection with] lease surrender." (Bankr. Op. at 4.)

On November 3, 2025, the Bankruptcy Court denied each of HVP's motions. (*See* Bankr. Order.) HVP now appeals three discrete issues from the Bankruptcy Court's Order. First, although the parties agree that May stub rent was paid in full as of September 8, 2025, HVP argues this payment was untimely under the Bankruptcy Code and seeks $4,979.36 in "post-petition late fees." (ECF Nos. 1, 2; *see* Bankr. ECF No. 1755-1.) Second, HVP seeks $38,249.00 in attorney's fees in connection with its motion to compel payment of May stub rent. (*Id.*) Third, HVP seeks post-surrender fees, including the entirety of August rent ($29,684.67), in connection with Appellees' surrender of the premises, which HVP submits was untimely. (*Id.*)[3] The appeal has been fully briefed and is ripe for decision.

## II. LEGAL STANDARD

A district court has appellate jurisdiction over the final judgments, orders, and decrees of a bankruptcy court. 28 U.S.C. § 158(a)(1). A district court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." *Ins. Co. of N. Am. v. Cohn* (*In re Cohn*), 54 F.3d 1108, 1113 (3d Cir. 1995) (quoting former Fed. R. Bankr. P. 8013 (amended 2014)); *see also W. Milford Shopping Plaza, LLC v. Great Atl. & Pac. Tea Co.* (*In re Great Atl. & Pac. Tea Co.*), No. 14-4170, 2015 WL 6395967, at

[3] HVP also appealed in part the Bankruptcy Court's Order denying its claim for CAM charges. (ECF Nos. 1, 2.) However, the parties confirmed during a telephone conference held on August 20, 2026 that these CAM charges were resolved by consent order in a related bankruptcy action. (ECF No. 8); *see In re Lakehurst & Broadway Corp.*, No 25-14831, ECF No. 467 at 6 (July 8, 2026 Bankr. D.N.J.) (resolving by consent order "any and all post-petition administrative expenses or claims of the Landlord relating to CAM"). Moreover, to the extent the parties' briefing addresses issues distinct from those discussed herein, counsel for HVP made clear during the teleconference that the only outstanding issues to be resolved by this Court are (1) post-petition late fees, (2) attorney's fees, and (3) fees in relation to Appellees' surrender of the premises. (See Transcript of August 20, 2026 Telephone Conference at 8 ("I just want to make it clear that there are three issues remaining. It's the late fees, the attorney[']s fees, and it's August rent.").)

*2 n.1 (S.D.N.Y. Oct. 21, 2015) (explaining that, although this language was removed from Federal Rule of Bankruptcy Procedure 8013 via amendment, "logic still compels the same conclusion with respect to the appellate powers of the District Court"). The standard of review for a bankruptcy court decision "is determined by the nature of the issues presented on appeal." *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147, 157 (D.N.J. 2005). A bankruptcy court's legal conclusions are subject to plenary review. *See In re Congoleum Corp.*, 149 F.4th 318, 327 (3d Cir. 2025). Factual findings, however, are accepted by a district court unless clearly erroneous, *i.e.*, "completely devoid of minimum evidentiary support displaying some hue of credibility or bear[ing] no rational relationship to the supportive evidentiary data." *Kool, Mann, Coffee & Co. v. Coffey*, 300 F.3d 340, 353 (3d Cir. 2002) (internal quotation marks omitted).

## III. <u>DISCUSSION</u>

### A. Post-Petition Late Fees

First, HVP appeals the Bankruptcy Court's Order denying its claim for $4,979.36 of post-petition late fees in connection with Appellees' payment of May 2025 stub rent. (App. at 10; *see* Bankr. ECF No. 1755-1.) The Bankruptcy Court determined that HVP was not entitled to post-petition late fees for May stub rent because Appellees timely rendered payment on September 8, 2025. (Bankr. Op. at 4.) In its decision, the Bankruptcy Court explained that stub rent, under the Bankruptcy Code, "amounts to an administrative expense under § 503(b)(1)(A)" and therefore need only be addressed prior to plan confirmation, which had not yet occurred when Appellees issued payment. (*Id.*)

On appeal, HVP argues that the Bankruptcy Court mischaracterized the amount due for May rent as an administrative expense not due until plan confirmation. Instead of treating Appellees' May rental obligation as "stub rent" under 11 U.S.C. § 503(b)(1)(A), HVP asserts that

the Bankruptcy Court should have treated this amount as an "obligation" under 11 U.S.C. § 365(d)(3), which Appellees were required to more "timely perform." (App. at 3–7.) HVP also appears to argue in the alternative that, even if the May rental obligation is considered "stub rent," this too should be subject to § 365(d)(3)'s timely performance requirement—as opposed to the Bankruptcy Court's chosen § 503(b)(1)(A) approach. (*Id.* at 6; *see* Reply at 6 ("While stub rent may be classified as an administrative expense for priority purposes, section 365(d)(3) separately and independently requires timely performance of lease obligations which is explicit in the statute.").) HVP's position is that the Bankruptcy Court should have awarded it post-petition late fees because Appellees' September 8, 2025 payment—whether viewed as a standard rent obligation or "stub rent"—violated § 365(d)(3)'s "timely perform[ance]" requirement. (*See id.*)

The Court disagrees. Section 365(d)(3) of the Bankruptcy Code "imposes a special duty with respect to unexpired leases of nonresidential real property." *Goody's*, 610 F.3d at 816. This provision requires debtors to "timely perform . . . obligations . . . arising from and after the order of relief" for *post*-petition obligations. *Id.* at 816–17 (quoting 11 U.S.C. § 365(d)(3)). Interpreting the language of this provision, the Third Circuit has explained that "[i]n the context of a lease contract," an "obligation *arises* when one becomes legally obligated to perform," so when a debtor is faced with a rental obligation, such an obligation "arises" on the day the rent is due and payable. *See In re Montgomery Ward Holding Corp.*, 268 F.3d 205, 209 (3d Cir. 2001) (emphasis added). Thus, when a debtor's rent comes due (as in, arises) *after* its petition date but *before* the date that it formally rejects the lease, § 365(d)(3) requires the debtor to "timely perform" this rent obligation. *Goody's*, 610 F.3d at 817. However, when a debtor's rent comes due *before* its petition date, this is merely a pre-petition obligation *not* subject to this "timely performance" requirement under § 365(d)(3). *Id.*

In this case, rent was due May 1, 2025, and Appellees filed their bankruptcy petition on May 5, 2025. Appellees' May rent obligation—including for the stub period post-petition—is therefore a *pre-petition* obligation not subject to classification as an administrative expense under § 365(d)(3). *See, e.g.*, *In re DVI, Inc.*, 308 B.R. 703, 707 (Bankr. D. Del. 2004) ("[T]he first day of the month was pre-petition, not post-petition. Therefore, the . . . rent cannot be classified as an administrative expense pursuant to section 365(d)(3)"); *In re Goody's Fam. Clothing, Inc.*, 392 B.R. 604, 609 (Bankr. D. Del. 2008) ("June rent was due on June 1st, 9 days before the Petition Date. Under the plain meaning of section 365(d)(3), the June rent obligations arose pre-petition and are not administrative expenses under section 365(d)(3)."), *aff'd*, 401 B.R. 656 (D. Del. 2009), *aff'd sub nom.* 610 F.3d 812 (3d Cir. 2010). Thus, the Bankruptcy Court properly characterized Appellees' use and occupancy of the premises from May 5 to May 31, 2025, as stub rent under § 503(b). Moreover, the Court sees no error in the Bankruptcy Court's finding that Appellees' September 8, 2025 payment of stub rent was timely insofar as it was "prior to plan confirmation." (Bankr. Op. at 4.) Given the general consensus among courts in this circuit that "[t]he determination of the timing of payment of administrative expenses" under § 503(b) "is a matter within the discretion of the bankruptcy court," the Court will not disturb that determination here. *In re HQ Glob. Holdings, Inc.*, 282 B.R. 169, 173 (Bankr. D. Del. 2002); *see In re Chi-Chi's, Inc.*, 305 B.R. 396, 401 (Bankr. D. Del. 2004) (same); *In re Guardian Elder Care at Johnstown, LLC*, 665 B.R. 270, 273 (Bankr. W.D. Pa. 2024) (same).

Turning to HVP's argument that May stub rent should nevertheless be subject to the timely performance requirement of § 365(d)(3), the Court likewise rejects this claim. HVP points to no case from this circuit, and the Court is aware of none, where a court has treated stub rent as an administrative expense subject to § 365(d)(3)'s "timely perform[ance]" requirement. Rather, the

weight of authority appears to support the counter proposition—that "stub rent is *not* allowable as an administrative claim under section 365(d)(3)." *See In re Sportsman's Warehouse, Inc.*, 436 B.R. 308, 312 (Bankr. D. Del. 2009) (emphasis added); *In re Chi-Chi's, Inc.*, 305 B.R. at 400 ("Both parties agree that the Debtors are not required under Section 365(d)(3) to pay the stub period rent.") (citing *Montgomery Ward*, 268 F.3d 205). Indeed, the Third Circuit's decision in *Goody's*, a case on which HVP relies, refutes this argument. There, the Third Circuit considered a debtor's argument that it was not required under § 365(d)(3) to pay for its post-petition use of retail space between June 9 and June 30, 2008, because June rent was due on the first of the month and § 365(d)(3) did not mandate payment of pre-petition obligations. *Goody's*, 610 F.3d at 816. While the Third Circuit ultimately held that the landlord could seek compensation from the debtor for this period of use as an administrative expense under § 503(b)(1), it expressly recognized that the debtor was "*not* required under § 365(d)(3) to make good on the June 1, 2008, pre-petition obligation." *Id.* at 817. Accordingly, the Court affirms the Bankruptcy Court's denial of post-petition late fees.

### B. Attorney's Fees

HVP also appeals the Bankruptcy Court's Order denying its claim for $38,249.00 in attorney's fees, which HVP submits were incurred in the process of filing its motion to compel payment of May 2025 rent. (App. at 10; *see* Bankr. ECF No. 1755-1.) HVP originally filed this motion to compel on May 9, 2025, four days after Appellees' petition date, and sought attorney's fees pursuant to § 21.3 of the Lease. (*See* Bankr. ECF No. 182-1.) That Lease provision entitles the "prevailing party" to reasonable attorney's fees and expenses in the event either party "seeks enforcement of its rights and commences any suit for the collection of any amounts for which the other may be in default or for the performance of any other covenant or agreement" under the

Lease. (Lease § 21.3.) Denying this claim, the Bankruptcy Court emphasized that HVP had not met the requirements of this fee-shifting provision because, as of the time HVP brought its motion to compel, May stub rent was not yet due, meaning there were no "defaulted obligations" to be enforced through legal intervention. (Bankr. Op at 7–8.) Under such circumstances, the Bankruptcy Court concluded that HVP could not be deemed a "prevailing party" within the meaning of § 21.3 of the Lease. (*Id.* at 8.)

On appeal, HVP contends the Bankruptcy Court erred in concluding it was not a prevailing party because, "had [HVP] not made the motion, . . . Appellee[s] would have never paid" May stub rent. (App. at 10.) In other words, HVP argues that its preemptive motion to compel, although ultimately denied by the Bankruptcy Court, was "successful" insofar as it achieved its ultimate goal of compelling Appellees to pay May stub rent. (*Id.*) HVP contends this is sufficient to make it a "prevailing party" under § 21.3 of the Lease. (*Id.* at 10–11.)

Under the subject circumstances, HVP's expansive interpretation of "prevailing party" is "beyond the beyond" and well into the realm of sheer speculation. As the Bankruptcy Court correctly found, Appellees' obligation to pay May stub rent was prescribed by § 503(b)(1), and as previously explained, their payment in satisfaction of that obligation was timely. (Bankr. Op. at 4.) It follows that any relief attained by HVP came about not through its litigation efforts, but through the natural operation of the Bankruptcy Code. (*Id.* at 8 ("Any and all relief ultimately achieved on behalf of the Landlord came about by operation of law under the Bankruptcy Code—and required little, if any, action by the Landlord or its counsel.").) Under these circumstances, HVP cannot be considered a "prevailing party" within the meaning of § 21.3 of the Lease. The Court therefore affirms the Bankruptcy Court's Order denying HVP's claim for attorney's fees.[4]

[4] The Court also notes that, as in the Bankruptcy Court proceeding, HVP's filings in this appeal are "devoid of any time records, legal invoices, or supporting certifications to evidence the attorneys' fees requested."

### C. Lease Surrender

HVP finally appeals the Bankruptcy Court's decision that Appellees properly surrendered the retail space. The Bankruptcy Court determined that Appellees properly surrendered the premises on July 31, 2025 after Appellees served a surrender letter on a representative of HVP. (Bankr. Op. at 5–6.) In the letter, Appellees advised that they had coordinated with an alarm company to disable the burglar alarm and provided detailed instructions regarding how to disable the local alarm. (*Id.*; *see* Bankr. ECF No. 2391 at 124–27.) The Bankruptcy Court observed that the letter was consistent with its Rejection Procedures Order, which permitted Appellees to effectuate surrender by "notify[ing] . . . the affected landlord in writing, with email being sufficient, that the keys, key codes, and security codes, if any, are not available, but that the landlord may rekey the leased premises." (Bankr. Op. at 5 (quoting Rejection Procedures Order ¶ 2a).) In addition to the letter, the Bankruptcy Court reviewed various sworn statements and exhibits submitted by the parties detailing the surrender process, which the Bankruptcy Court found supported its ultimate conclusion that surrender was properly effectuated on or before July 31, 2025. (*Id.* at 6.) Having found timely surrender before August, the Bankruptcy Court denied HVP's claim for August rent and any associated late fees. (*Id.*)

HVP now argues this finding was in error because, in its view, surrender was not effectuated until Appellees provided HVP with various access codes for the premises on August 18, 2025. (App. at 8; Reply at 9.) Although convoluted and difficult to follow, HVP appears to

---

(Bankr. Op. at 7 n.4.) HVP's failure to provide the Court with the minimum necessary information to discern the reasonableness of its request—even assuming, *arguendo*, that it was so entitled to such an award—independently warrants rejecting its claim. *See In re Pelican Pool & Ski Ctr., Inc.*, No. 05-22983, 2009 WL 2244573, at *16 (D.N.J. July 27, 2009) (noting that an award of attorney's fees under Section 365(d)(3) "is limited to those charges that are reasonable under the circumstances"); *see also United Auto. Workers Loc. 259 Soc. Sec. Dep't v. Metro Auto Ctr.*, 501 F.3d 283, 291 (3d Cir. 2007) ("A request for fees must be accompanied by fairly definite information as to hours devoted to various general activities . . . ." (cleaned up)).

make two arguments in support of this position. First, HVP indicates, without citation, that the propriety of surrender is governed by the law of the state in which the premises are located, which in this case is New York. (App. at 8–9.) Based on this view, HVP argues New York law states surrender cannot be effectuated until a landlord regains physical or constructive possession of the premises—*i.e.*, the ability to exercise dominion or control over the property. (App. at 8; *see* Reply at 10–11.) HVP thus claims that it only regained "constructive possession" of the premises when Appellees provided it with the access codes on August 18, 2025, thereby rendering surrender untimely. (App. at 9.) Next, HVP appears to argue in the alternative that, even if the Rejection Procedures Order exclusively governs the propriety of surrender in this case, the letter contravened that order because Appellees were in possession of the access codes when the letter was sent. As a result, HVP argues it was not the case that the "key codes . . . [were] unavailable" when the letter was sent, and therefore Appellees did not sufficiently comply with the Rejection Procedures Order to effectuate surrender. (App. at 8–9 (quoting Rejection Procedures Order).) HVP accordingly seeks $29,684.67—the entirety of August rent—and additional fees based on this untimely surrender. (*Id.*; *see* Reply at 10; Bankr. ECF No. 1755-1.)

11 U.S.C. § 365 establishes the mechanism for lease rejection and surrender in a federal bankruptcy proceeding. Section 365(a) provides that a debtor may, "subject to the court's approval," reject an unexpired nonresidential lease, while § 105(a) authorizes the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of Chapter 11. Here, the Bankruptcy Court's Rejection Procedures Order permitted Appellees to surrender the premises by "notify[ing] . . . [HVP] in writing, with email being sufficient, that the keys, key codes, and security codes, if any, are not available, but that [HVP] may rekey the leased premises." (Bankr. Op. at 5 (quoting Rejection Procedures Order ¶ 2a).) The

Rejection Procedures Order does not make compliance further contingent upon satisfying state law surrender doctrines. Nor does the Bankruptcy Code otherwise provide for such a limitation. On the contrary, courts have generally found that the Bankruptcy Code will preempt state law that, if applied, would supersede § 365. *See, e.g.*, *In re Andover Togs, Inc.*, 231 B.R. 521, 543 (Bankr. S.D.N.Y. 1999) ("Application of the doctrine of surrender and acceptance would have the effect of allowing state law to supersede bankruptcy law, thereby violating the Supremacy Clause."); *see also, e.g.*, *In re Duckwall-ALCO Stores, Inc.*, 150 B.R. 965, 971 (D. Kan. 1993) (affirming bankruptcy court's finding that state law doctrine of surrender was preempted by Bankruptcy Code); *In re McLean Enters., Inc.*, 105 B.R. 928, 932 (Bankr. W.D. Mo. 1989) ("To the extent section 365 is inconsistent with state law, the Supremacy Clause of the United States Constitution mandates that this Court follow federal law."). Absent some limitation in the Bankruptcy Court's Rejection Procedures Order or the Bankruptcy Code itself, the Court concludes that HVP's invocation of state law principles may not supersede the validity of a surrender accomplished in accordance with a federal bankruptcy order.

HVP's alternative argument that Appellees' surrender was invalid even under the Rejection Procedures Order is similarly meritless. Having reviewed the record on appeal, the Court finds no clear error in the Bankruptcy Court's factual determination that the surrender letter reflected Appellees' position that "the keys, key codes, and security codes . . . [were] not available" when surrender became effective July 31, 2025. (Bankr. Op. at 5–6 (discussing Bankr. ECF No. 2391 at 124–27).) The Bankruptcy Court reviewed a voluminous record in this case, including certifications containing various sworn statements and exhibits from individuals involved in the surrender process. (*Id.* at 6.) Based on this review, the Bankruptcy Court found there were "extensive and timely communications between [the parties]" that reflected "a concerted effort to

assist" HVP throughout the rejection and surrender process. (*Id.*) The Court agrees with this assessment. (*See, e.g.*, Declaration of Debora Diprizito, Bankr. ECF No. 2461; Declaration of Shelby A. Marks, Bankr. ECF No. 2462.) Insofar as HVP points to other evidence from which to infer Appellees possessed and intentionally withheld the codes when the letter was sent, the Court concludes this evidence is insufficient to render the Bankruptcy Court's findings so "completely devoid of minimum evidentiary support" as to warrant reversal. *See Kool, Mann, Coffee & Co.*, 300 F.3d at 353; *see also In re Fiber-Span, Inc.*, 40 F.4th 79, 93 (3d Cir. 2022) ("Great care must be exercised . . . to defer to the fact-finding tribunal, absent clear error, and here the role of fact-finder belonged to the Bankruptcy Court"). The Court will not disturb the Bankruptcy Court's conclusion that Appellees properly surrendered the premises effective July 31, 2025, and will therefore affirm the Order denying HVP's claim for August rent and related late fees.

## CONCLUSION

For reasons set forth above, HVP's Appeal is **DENIED** and the Bankruptcy Court's Order is **AFFIRMED.** An appropriate Order accompanies this Memorandum Opinion.

ROBERT KIRSCH
UNITED STATES DISTRICT JUDGE

Dated: September 14, 2026